# EXHIBIT A

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF SPARTANBURG ) | CIVIL ACTION COVERSHEET |
| ANDREA McSWAIN, as Personal Representative of ) the Estate of CHARLES BURNETTE, ) **Plaintiff(s)** ) | |
| vs. ) | 2015-CP - 42-*5015* |
| MAGNOLIA PLACE OF SPARTANBURG and ) THI OF SOUTH CAROLINA AT MAGNOLIA ) PLACE AT SPARTANBURG, LLC. ) **Defendant(s)** ) | |

Submitted By: James W. Segura
Address: 304 Pettigru Street, Greenville, SC 29601

SC Bar #:      8606
Telephone #:  864-271-2232
Fax #:         864-233-7516
Other:         jamessegura@
E-mail:        varnerandsegura.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION *(Check all that apply)*
***If Action is Judgment/Settlement do not complete***

☐ JURY TRIAL demanded in complaint.   ☒ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Conversion (310) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Motor Vehicle Accident (320) | ☐ Condemnation (410) |
| ☐ General (130) | ☒ Medical Malpractice (220) | ☐ Premises Liability (330) | ☐ Foreclosure (420) |
| ☐ Breach of Contract (140) | Previous Notice of Intent Case # | ☐ Products Liability (340) | ☐ Mechanic's Lien (430) |
| ☐ Fraud/Bad Faith (150) | 2015 -NI-42 - 009 | ☐ Personal Injury (350) | ☐ Partition (440) |
| ☐ Failure to Deliver/ Warranty (160) | ☐ Notice/ File Med Mal (230) | ☐ Wrongful Death (360) | ☐ Possession (450) |
| ☐ Employment Discrim (170) | ☐ Other (299) | ☐ Assault/Battery (370) | ☐ Building Code Violation (460) |
| ☐ Employment (180) | | ☐ Slander/Libel (380) | ☐ Other (499) |
| ☐ Other (199) | | ☐ Other (399) | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Public Service Comm. (990) |

| Special/Complex /Other | | | | Judgments/Settlements | Appeals |
|---|---|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | | | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | | | ☐ Petition for Workers Compensation Settlement Approval (780) | ☐ Other (999) |
| ☐ Medical (620) | ☐ Out-of State Depositions (650) | | | | |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | | | ☐ Other (799) | |
| ☐ Sexual Predator (510) | ☐ Pre-Suit Discovery (670) | | | | |

Submitting Party Signature: _____     Date:  12/02/2015

SCCA / 234 (06/2015)                          Page 1 of 3

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

FILED
CLERK OF COURT
SPARTANBURG COUNTY
2015 DEC -7 PM 2: 41
M. HOPE BLACKLEY

## FOR MANDATED ADR COUNTIES ONLY

Aiken, Allendale, Anderson, Bamberg, Barnwell, Beaufort, Berkeley, Calhoun, Charleston, Cherokee, Clarendon, Colleton, Darlington, Dorchester, Florence, Georgetown, Greenville, Hampton, Horry, Jasper, Kershaw, Lee, Lexington, Marion, Oconee, Orangeburg, Pickens, Richland, Spartanburg, Sumter, Union, Williamsburg, and York

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

You are required to take the following action(s):

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Requests for temporary relief;

   c. Appeals;

   d. Post Conviction relief matters;

   e. Contempt of Court proceedings;

   f. Forfeiture proceedings brought by governmental entities;

   g. Mortgage foreclosures; and

   h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

Please Note:    You must comply with the Supreme Court Rules regarding ADR.
Failure to do so may affect your case or may result in sanctions.

STATE OF SOUTH CAROLINA           )     IN THE COURT OF COMMON PLEAS
                                  )
COUNTY OF SPARTANBURG             )
                                  )
ANDREA McSWAIN, as Personal       )
Representative of the             )     C.A. NO.: 2015-CP-42- 5015
Estate of CHARLES BURNETTE,       )
and for the benefit of the        )
statutory beneficiary             )
claimant: ANDREA McSWAIN,         )
                                  )
              Plaintiff,          )
                                  )
        vs.                       )     **SUMMONS**
                                  )
MAGNOLIA PLACE OF                 )
SPARTANBURG and THI OF SOUTH      )
CAROLINA AT MAGNOLIA PLACE        )
AT SPARTANBURG, LLC.,             )
                                  )
              Defendants.         )
                                  )

TO:    Magnolia Place of Spartanburg:

       YOU ARE HEREBY summoned and required to answer the Complaint in this
action, a copy of which is herewith served upon you and to serve a copy of your Answer
to the said Complaint on the subscriber at his office, VARNER & SEGURA, 304 Pettigru
Street, Greenville, South Carolina 29601, within thirty (30) days after the service hereof,
exclusive of the day of such services; and if you fail to answer the Complaint within the
time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded
in the Complaint.

                              Respectfully Submitted,

                              VARNER & SEGURA

                              _____
                              James W. Segura
                              Attorney for Plaintiff
                              304 Pettigru Street
                              Greenville, South Carolina 29601
                              (864) 271-2232

Dated:  November 24, 2015
Greenville, South Carolina

1

STATE OF SOUTH CAROLINA        )        IN THE COURT OF COMMON PLEAS
                               )
COUNTY OF SPARTANBURG          )
                               )
ANDREA McSWAIN, as Personal    )
Representative of the          )        C.A. NO.: 2015-CP-42-_5015_
Estate of CHARLES BURNETTE,    )
and for the benefit of the     )
statutory beneficiary          )
claimant: ANDREA McSWAIN,      )
                               )
            Plaintiff,          )
                               )
    vs.                        )        **COMPLAINT**
                               )
MAGNOLIA PLACE OF              )
SPARTANBURG and THI OF SOUTH   )
CAROLINA AT MAGNOLIA PLACE     )
AT SPARTANBURG, LLC.,          )
                               )
            Defendants.         )
_____)

TO:    Magnolia Place of Spartanburg and THI of South Carolina,  LLC.

    The Plaintiff above named, complaining of the Defendants above named, alleges and says as follows:

    1.    The Plaintiff Andrea McSwain is the duly authorized personal representative of Charles Burnette under Greenville County Probate Court case number 2015ES4200752.

    2.    That the only statutory hier claimant of the Estate of Charles Burnette is: Andrea McSwain.

    3.    Charles Burnette was admitted to Magnolia Place, a Nursing Home, on or about 01/10/2014. That THI of South Carolina at Magnolia Place at Spartanburg is the management company for the Nursing Home. That THI of South Carolina at Magnolia Place at  Spartanburg, LLC is the licensee of the Nursing Home.

2

4. That the Defendants own, operate, or manage a licensed Nursing Home doing business in the County of SPARTANBURG.

5. That this Court has subject matter and personal jurisdiction over the parties.

6. That the Plaintiff would show that the Defendants own, operate, or manage a licensed Nursing Home under such terms as understood in law and certified for participation in the Medicaid program as an intermediate to skilled care facility. Because of its election to participate as long-term care provider, Defendants were able to enjoy substantial revenues paid by taxpayer-funded programs. Not only did government programs provide Defendants with a guaranteed payment source but also a continual flow of residents whose care was paid for by the Medicaid program or some other tax payer funded program. Having availed itself with the privileges and financial benefits available to licensed nursing care operators certified for participation in such programs, Defendants are and were at all times material to this lawsuit required to comply with the rules and regulations promulgated by the South Carolina Department of Environmental Control and the Federal Minimum Standards Participation by the United States Department of Health and Human Services and at all times material to the lawsuit required to comply with the foregoing rules and regulations in caring for Charles Burnette.

7. That Charles Burnette became a resident of Defendants' facility on or about 01/10/2014.

8. That the Defendants were aware of Charles Burnette's medical conditions and required care and represented that the Defendants could adequately care for the needs of Charles Burnette.

3

9.    In an effort to insure that the care of Charles Burnette, and other patients whose care was funded by the government were placed at Defendants' facility, the Defendants held themselves out to the Department of Health and Environmental Control and the public at large as being:

    a)    Skilled in the performance of nursing, rehabilitative and other medical support services;

    b)    Properly staffed, supervised and equipped to meet the total needs of its Nursing Home residents; and

    c)    Able to specifically meet the total nursing, medical and physical therapy needs of Charles Burnette and other residents like Charles Burnette.

10.    That in order to participate in the Medicaid program as a provider, the Defendants entered into a contract with the Department of Health and Environmental Control for administering the Medicaid program. As part of this contract, Defendants agreed to comply on a continual and ongoing basis with the rules and regulations promulgated by the Department of Health and Environmental Control and to correct all deficiencies in a timely manner.

11.    That during the time Charles Burnette was at Defendants' Nursing Home or received care under the management or control of the Defendants, incomplete records were kept in violation of the standard of care of Medicaid Rules and Regulations and State Department of Health and Environmental Control Rules and Regulations.

12.    That the Defendants knew or should have known of Charles Burnette's condition and need for special care to prevent injury to Charles Burnette.

4

13.    That while a resident of Defendants' facility Charles Burnette suffered:

    a)    a fall that caused three large bruises and skin tears;

    b)    another fall after Mr. Burnette trippped over an eletrical cord while he was getting out of bed; and

    c)    a right hip fracture that required surgical ORIF intervention.

12. That the Affidavit of Karen Coleman is attached hereto as Exhibit A and incorporated herein by reference.

## FOR A FIRST CAUSE OF ACTION

## NEGLIGENCE

14.    All the allegations contained in Paragraphs 1 through 13 are hereby incorporated herein as if they had been set forth fully hereunder.

15.    That the injuries and resulting damages to Charles Burnette were caused by one or more of the following acts or omissions of negligence, gross negligence, recklessness, willful or wanton behavior of the Defendants, its agents, employees or those under their management direction or control or for which it had a non-delegateable duty to provide:

    a)    Failure to provide sufficient numbers of qualified personnel including nurses, nursing assistants, medication aides, orderlies, hereinafter Nursing Home personnel, to meet the total needs of Charles Burnette, and other residents of the nursing home;

    b)    Failure to adequately assess, evaluate and supervise registered nurses, licensed vocational nurses, nurses' aides or assistants, medication assistants, dietary personnel and laundry personnel as

5

to insure that Charles Burnette, received good proper nursing care in accordance with the Defendants policies and procedures manual, the Department of Health and Environmental Control minimum standards, participation of skilled nursing facilities and licensing standards and the regulations for the United States Department of Health and Human Services;

c) Failure to provide a nursing staff that was properly manned, qualified, trained and motivated;

d) Failure to adequately screen, evaluate, check references, test for competency or use ordinary care in selecting Nursing Home personnel to work at the nursing home;

e) Failure to terminate employees at the Nursing Home assigned to care for Charles Burnette known to be careless, incompetent or unwilling to comply with policy and procedures of the Defendants and the rules and regulations promulgated by the Department of Health and Human Resources and the Regulations of the United States Department of Health and Human Services;

f) Failure to assign sufficient Nursing Home personnel at the Nursing Home consistent with their education, experience based upon Charles Burnette's medication history and condition and rehabilitative needs and the nursing skills needed to provide care to such a patient;

6

g)    Failure to establish, publish and adhere to policies for Nursing Home personnel concerning the care and treatment of residents and the medical and psychosocial needs similar to those of Charles Burnette;

h)    Failure to provide and insure an adequate nursing care plan based upon the needs of Charles Burnette, at the time of Charles Burnette's admission and subsequent treatment at the Defendants' nursing home;

i)    Failure to provide and insure adequate nursing care plan revisions and modifications as the needs of Charles Burnette, changed;

j)    Failure to adopt adequate guidelines, policies and procedures for determining whether the Defendants had sufficient numbers in nursing personnel, including registered and licensed vocational nurses, nursing assistants, medication assistants, orderlies and other staff to provide twenty-four (24) hour nursing services meet the needs of residents who are admitted and remain in the faculty to meet to total needs of the recipient patients;

k)    Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in-patient care at the nursing home, which was under the management, control and direction of the Defendants;

l)    Failure to insure and provide adequate training in prevention of falls;

7

m)   Failure to insure, assist and provide Charles Burnette, with adequate nursing care, treatment and medication after Charles Burnette fell;

n)   Failure to insure and provide care, treatment and medication to Charles Burnette, according to the physician's order;

o)   Failing to informing the responsible party and other family members of major changes in Charles Burnette's condition;

p)   Failing to ensure that all residents receive adequate supervision to prevent accidents pursuant to 42 CFR 483.25;

q)   Failing to review evaluate and investigate accidents in accordance with facility policy in violation of S.C. regulation 61 – 17;

r)   Failing to properly evaluate and assess and implement interventions to reduce Charles Burnette's risk of fall;

s)   Failing to exercise due care, to properly evaluate and care for Charles Burnette, and his/her needs for appropriate care and supervision;

t)   Deficiencies, omissions, and breaches of the standard of care occurred by the Defendants including but not limited to the following:

   i.   Failure to conduct a fall risk evaluation upon readmission on January 10, 2014;

   ii.   Failure to provide safety alarms before the February, 2014 falls;

   iii.   Failure to monitor the resident closely and frequently;

   iv.   Failure to ensure that the resident' environment was free of environmental hazards;

8

v.       Failure to identify the need for and provide a toileting program;

vi.      Failure to ensure that necessary measures were provided to promote safety and allow the resident to communicate his needs;

vii.     Failure to maintain complete, accurate, and factual medical records; and

viii.    Failure to ensure that necessary measures were provided to promote safety and allow the resident to communicate his needs.

That the above listed items are in violation of the South Carolina Common Law, Statutory, State and Federal Regulations.

16.    That the Defendants failed in its obligations to care for Charles Burnette and along with acts and omissions or omission of the Defendants as set out above proximately caused Charles Burnette to suffer injuries, pain and suffering, mental anguish, unnecessary medical expenses, humiliation, and the loss of enjoyment of life and further, the scope and severity of the recurrent negligence inflicted upon Charles Burnette while Charles Burnette was under the care of the facility proximately accelerated the deterioration of his health and physical condition beyond that caused by the normal aging process; resulted in the physical and emotional trauma described below; and hastened and proximately caused Charles Burnette's death. More specifically, Charles Burnette, had three large bruises, skin tears, and a broken right hip that required ORIF surgical intervention, causing Charles Burnette to incur medical bills as well as causing pain and suffering, disfigurement, mental anguish; the loss of

9

enjoyment of life, in an amount to be determined by the jury for actual and punitive damages.

## SECOND CAUSE OF ACTION

## SURVIVAL ACTION

17.    The above paragraphs are incorporated herein as if they had been set forth fully hereunder.

18.    That the Defendants failed in its obligations to care for Charles Burnette and along with acts and omissions or omission of the Defendants as set out above proximately caused Charles Burnette to suffer injuries, pain and suffering, mental anguish, medical expenses, humiliation, and the loss of enjoyment of life and further, the scope and severity of the recurrent negligence inflicted upon Charles Burnette while Charles Burnette was under the care of the facility proximately accelerated the deterioration of his health and physical condition beyond that caused by the normal aging process; resulted in the physical and emotional trauma described below; and hastened and proximately caused Charles Burnette's death. More specifically, Charles Burnette, had three large bruises, skin tears, and a broken right hip that required ORIF surgical intervention, causing Charles Burnette to incur medical bills as well as causing pain and suffering, disfigurement, mental anguish; the loss of enjoyment of life, and funeral expenses pursuant South Code of Laws sec. 15-51-100 in an amount to be determined by the jury for actual and punitive damages  pursuant to South Code of Laws sec. 15-51-90.

10

### THIRD CAUSE OF ACTION

### Wrongful Death

19.     The above paragraphs are incorporated herein as if they had been set forth fully hereunder.

20.     That as a direct and proximate result of the negligence, gross negligence, reckless and willful acts or omissions on the part of the Defendant, Charles Burnette was wrongfully killed and the statutory beneficiaries have proximately suffered:

        a.     mental shock and suffering;

        b.     grief and sorrow;

        c.     wounded feelings;

        d.     loss of companionship;

        e.     loss of consortium, and deprivation of the use and comfort of the decedent's society; and

        g.     funeral expenses;

All in an amount to be determined by the jury for actual damages and punitive damages pursuant to South Code of Laws sec. 15-51-10 et seq. and South Carolina Code of Laws sec 15-5-100.

WHEREFORE, the Plaintiff prays as follows:

1.     For trial by jury as to all issues raised in the Complaint;

2.     For actual and punitive damages in an amount to be determined by the jury;

3.     For such other and further relief as this Court deems just and proper.

11

Respectfully Submitted,

James W. Segura
Varner & Segura
Attorney for Plaintiff
304 Pettigru Street
Greenville, South Carolina 29601
(864) 271-2232

Date: November 24, 2015
Greenville, South Carolina
1.

FILED
CLERK OF COURT
SPARTANBURG COUNTY
2015 DEC -7  PM 2: 41
M. HOPE BLACKLEY

## COUNTY OF MARION

## AFFIDAVIT OF KAREN COLEMAN

1.    My name is Karen Coleman. I am over the age of eighteen, of sound mind and otherwise competent to create this Affidavit, which is set forth based upon my background, education, training, and experience. This affidavit is also based upon my own personal knowledge.

2.    I am and have been a Registered Nurse, licensed in the State of South Carolina, since 1991. My further qualifications and background are set forth in the attached CV (Exhibit "A"), which is incorporated by reference.

3.    I have actual professional knowledge and experience in my area of practice, Registered Nursing, including my specialty within this area, which is geriatrics (i.e. nursing home and long term care).

4.    I am familiar with the standard of care applicable to the Defendants during the time of Mr. Charles Burnette's residency in the Defendant's facility, Magnolia Place, and the standard of care and skill exercised by reasonably prudent nursing homes under similar conditions, as those involving Mr. Burnette.

5.    I have reviewed the records from Magnolia Place and Spartanburg Regional Medical Center relating to Mr. Burnette's residency at the facility. Based on my review of these records, I find that there is at least one deviation from the standard of care by the Defendants during Mr. Burnette's residency at Magnolia Place.

6.    Without limitation, my review of records revealed the following:
- Mr. Burnette was initially admitted to Magnolia Place on November 12, 2013. He remained a resident of the facility until the time of his discharge on December 24, 2013.
- On January 10, 2014, he was readmitted to Magnolia Place. His later residency at Magnolia Place lasted until March 16, 2014.
- Although medical records from Magnolia Manor were not complete, from the records provided, it could be determined that Mr. Burnette was a resident at Magnolia Place from January 10, 2014 - March 16, 2014. During this residency, Mr. Burnette exhibited cognitive deficits secondary to his underlying Dementia. His cognitive deficits created short and long-term memory problems, periods of disorganized thinking, impaired decision-making, impulsiveness and decreased safety awareness.
- During this same time frame encompassing January 10, 2014 – March 16, 2014, Mr. Burnette had physical limitations related to Dementia, Parkinson's, debility, and generalized osteoarthrosis. His physical limitations caused tremors, weakness, joint pain, and an unsteady gait creating the need for hands-on/limited staff assistance with transitions, toileting, and ambulation.

1

Verbal cueing was also necessary during ADLs to promote safety awareness, ensure safe hand placement, and promote proper body mechanics.

- The presence of expressive aphasia and difficulty hearing also caused Mr. Burnette to have potential problems communicating his needs and having his needs understood.
- Mr. Burnette also had occasional urinary incontinence with bowel continence, both of which reflected ability to sense the need to toilet. Due to his physical limitations, cognitive deficits, and communication concerns, Mr. Burnette required staff to assist him to and from the toilet at regular intervals to prevent unsafe, unassisted ambulation.
- From the records provided, Mr. Burnette, who was diabetic, also had a diagnosis of depression; the use of anti-depressants were apparently ordered during his residency at Magnolia Place.
- Mr. Burnette had a fall on either February 15th or 16th, 2014. On February 17, 2014, Mr. Burnette told the Physical Therapist Assistant that he had fallen over the weekend. The fall resulted in three large bruises and skin tears. The Physical Therapist Assistant reported the fall to the nursing staff.
- Mr. Burnette's cognitive deficits, physical limitations, communication concerns, occasional urinary incontinence, use of anti-depressants and history of falls, placed him at risk for future falls with need for implementation of measures to promote his safety.
- On February 21, 2014, Mr. Burnette had another fall in his bedroom, while attempting to transfer and ambulate to the bathroom unassisted. Per the Spartanburg Regional Medical Center records, tripping over an electrical cord was also a contributing to this fall.
- Mr. Burnette was transported to Spartanburg Regional Medical Center for evaluation and treatment of his condition, on February 21, 2014. Diagnosis at Spartanburg Regional Medical Center included a painful, right hip fracture, which had to be surgically repaired. Following the provision of anesthesia, during surgery to repair his hip fracture, Mr. Burnette's mental status seemed to be worsen.
- Mr. Burnette was hospitalized at Spartanburg Regional Medical Center from February 21, 2014 – February 28, 2014.
- On February 28, 2014, Mr. Burnette returned to Magnolia Place where he received therapy. In addition to therapy, safety alarms were ordered secondary to unassisted transfers and cognitive impairments, along with other fall risk factors.
- Following his return to Magnolia Place after the hip fracture, Mr. Burnette had pain to his right leg/hip almost daily.
- Mr. Burnette was discharged from Magnolia Place on March 16, 2014.

2

FILED
CLERK OF COURT
SPARTANBURG COUNTY
2015 DEC -7 PM 2: 41
M. HOPE BLACKLEY

7.    In my professional opinion, the Defendants of Magnolia Place deviated from the standard of care and skill generally exercised by staff members under similar conditions and like surrounding circumstances as those presented by Mr. Burnette. In my opinion, the staff deviated from the standard of care in the following particulars:

- Failure to complete the RAI process.
- Failure to conduct a fall risk evaluation upon readmission on January 10, 2014.
- Failure to provide safety alarms before the February 2014 falls.
- Failure to monitor the resident closely and frequently.
- Failure to ensure that the resident' environment was free of environmental hazards.
- Failure to identify the need for and provide a toileting program.
- Failure to ensure that necessary measures were provided to promote safety and allow the resident to communicate his needs.
- Failure to document all injuries in the medical record, determine contributing factors to the fall, and implement interventions to prevent future falls.
- Failure to monitor blood sugars before the falls in February 2014.
- Failure to report the hip fracture to the Department of Health and Environmental Control.
- Failure to maintain complete, accurate, and factual medical records.

8.    Additionally, it is my opinion that the Defendants breached the following laws and regulatory standards:

- SC Code of Laws, Title 40, Chapter 33, Nurse Practice Act, states in part that nurses are expected to: administer medications as ordered, assess the health status of persons they are caring for, and implement nursing interventions to achieve desired outcomes and provide safe and effective nursing care either directly or indirectly.
- SC Code of Laws, Title 43, Chapter 35, Adult Protection Act defines neglect as "The failure of omission of a direct care staff member or direct care volunteer to provide the care, goods, or services necessary to maintain the health or safety of a resident". Neglect may be repeated conduct or a single incident that has produced or could result in physical harm.
- SC DHEC Regulation Number 61-17, Standards for Licensing Nursing Homes, Resident Records/Content, Section 801, states in part the need for:
  - The facility to maintain adequate and complete records for each resident. The records shall be authenticated and dated promptly by the individual and identified by the name (and/or initials where acceptable) of the person providing or evaluating the care or service.
  - Contents of the medical record shall include, but is not limited to, incidents involving the resident, record of administration of each dose of medication, discharge summary, etc.
  - Records shall be maintained and shall be completed when treatment is rendered.

3

- SC DHEC Regulation Number 61-17, Standards for Licensing Nursing Homes, Reporting/Incidents, Section 701, requires accident/incidents resulting in serious injury (i.e. falls resulting in fractures) shall be reported to DHECs Division of Health Licensing in writing no later than 10 days from the occurrence. This section further states that internal investigations shall be conducted if the cause of the injury is unknown.

- United States Code of Federal Regulations, Section 483.20, Resident Assessment, mandates the facility to conduct initial and periodic comprehensive, accurate, standardized, reproducible assessments of each resident's functional capacity. The admission assessment must be completed within 14 days following admission and quarterly thereafter, unless significant changes in condition occur. The comprehensive care plan must be developed within 7 days, after the completion of the MDS process.

- United States Code of Federal Regulations, Section 483.25, Quality of Care, imposes the need for the facility to ensure that:
  - o Residents receive adequate supervision and assistance to prevent accidents from occurring.
  - o The resident's environment is free of accident hazards.
  - o Each resident is provided with necessary care and services to maintain his/her highest level of physical well-being.

- United States Code of Federal Regulations, Section 483.75, Administration, expects the facility:
  - o To be administered in a manner that allows the resident to maintain his/her highest level of physical well-being.
  - o Operate and provide services in compliance with all applicable Federal, State, and local laws, regulations, and codes and with accepted professional standards and principles that apply to professionals providing services in such a facility.
  - o Maintain clinical records for each resident in accordance with acceptable professional standards and practices that are complete, accurately documented, systemically organized, and readily accessible.

9.    Additionally, it is my opinion that the falls and injuries and complications Mr. Burnette sustained at Magnolia Place can be connected to deviations from the acceptable standard of care, as well as ordinary negligence.

10.    This is not a complete list of all deviations from the standard of care which I have found in reviewing these records. As a result, I reserve the right to modify, change or supplement these opinions in the future.

4

_____

Karen Coleman, RN

Sworn to me this 27th day of March , 2015

Notary Public for South Carolina
My commission expires:  My Commission Expires December 28, 2016

FILED
CLERK OF COURT
SPARTANBURG COUNTY

2015 DEC -7  PM 2:41

M. HOPE BLACKLEY